Filed 5/15/15  P. v. Tran CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHAU MAHN TRAN,<br><br>        Defendant and Appellant. | A137715<br><br>(Solano County<br>Super. Ct. No. FCR296899) |

After pleading guilty to a single count of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), appellant was given a suspended sentence and placed on 36 months probation.  He then filed a timely notice of appeal from the trial court's earlier order denying his motion to suppress pursuant to Penal Code section 1538.5.  His appointed appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), in which she raises no issue for appeal and asks this court for an independent review of the record.  Counsel attests that appellant was advised of his right to file a supplemental brief, but he has not exercised that right.  Having reviewed the entire record, we conclude there are no arguable issues on appeal, and affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Motion to Suppress Hearing*

Fairfield Police Dispatcher Stephanie Cannon was on duty on November 5, 2012 at approximately 12:15 a.m.  At that time, another dispatcher received two calls reporting that an Asian male was at the Solano Lodge on North Texas; he was banging on hotel

room doors and yelling. The man then moved into the lodge's parking lot on his bicycle and began waving a gun around. Cannon believed that the calls were received from two individuals who did not want to get involved. Cannon did not speak to either caller, but her impression was that the callers were anonymous. When the information appeared on Cannon's computer screen, she broadcast this report, sending it specifically to Officer Pedro Officer Arroyo, because the Solano Lodge was within his beat.

At about 12:15 a.m. on November 5, 2012 Officer Arroyo received the dispatch directing him to go to the Solano Lodge. Officer Arroyo was told to look for an Asian male adult on a bicycle who was waving a gun. When Officer Arroyo approached the Solano Lodge, less than two minutes after receiving the report, he saw an Asian male leaving the lodge area on a bike. The man was not waving a gun, and Officer Arroyo did not see anything indicating that he had a firearm. Officer Arroyo identified appellant as the person he had observed that night.

As appellant rode past him, Officer Arroyo turned on his patrol car's overhead lights. Officer Arroyo contacted appellant, pointed his gun at him and ordered him to get on the ground; appellant complied. Officer Arroyo felt compelled to draw his gun because the dispatch report had indicated that the Asian male had a gun. Appellant made no furtive movements when he was getting on the ground. At the time of the detention, Officer Arroyo had not seen appellant break any laws other than riding a bike on the sidewalk, which was a violation of the Fairfield Municipal Code.

When cover officers arrived, Officer Arroyo handcuffed appellant, securing both hands behind his back. Once appellant was on the ground, Officer Arroyo checked appellant's lower back with his hand using a flat circular motion to make sure he was not carrying a firearm in this area. This search did not yield a gun or incriminating evidence. Officer Arroyo then stood appellant up next to the officer's patrol car and informed appellant that he was going to conduct a pat-down search.

Officer Arroyo patted down appellant's outer clothing by starting at the top of his body, going down to the waist, and then going down each leg. While touching appellant's top left shoulder pocket, Officer Arroyo felt a substance that he believed "was

possible marijuana." He felt the substance, not a plastic bag. Officer Arroyo based this belief on his past experience, having searched other suspects' pockets and "[k]ind of know[ing] what marijuana feels like." In his nine years as a police officer, Officer Arroyo had felt marijuana in suspects' pockets over 200 times. Officer Arroyo denied that he squeezed or otherwise manipulated the pocket in order to detect the suspected marijuana. However, Officer Arroyo acknowledged that he could not have been 100 percent certain he was feeling marijuana unless he had squeezed, manipulated or retrieved the substance. He explained that is why he used the phrase "possible marijuana" in his official report. Officer Arroyo removed the item from appellant's pocket and concluded that it was marijuana based on his training and experience. Officer Arroyo asked appellant if he had a medical cannabis card, and he said no.

Officer Arroyo resumed the pat-down search and felt a suspected can of chewing tobacco in the same pocket where he had located the marijuana. Officer Arroyo continued the search without removing the suspected tobacco can from appellant's pocket. Officer Arroyo then felt what he believed was a pipe for smoking methamphetamine in one of appellant's front pants pockets. Officer Arroyo immediately recognized the pipe while feeling it from the outside of appellant's clothes, explaining "when you go over it, it has a distinct shape and feel." Officer Arroyo had encountered similar pipes during his nine years of police work. At this point, Officer Arroyo reached into appellant's pocket and removed the pipe. Officer Arroyo confirmed that it was a methamphetamine pipe based on it's distinct physical characteristics: "It was made out of glass, had a cylindrical bulb, and then [had] a small bulb at the end with a little hole on top."

After retrieving the item and confirming that it was a methamphetamine pipe, Officer Arroyo arrested appellant. Officer Arroyo then commenced a full search. He reached inside appellant's pocket and removed the can of chewing tobacco. Officer Arroyo looked inside the can and found a baggie containing a white substance that he suspected was methamphetamine. Six minutes passed from the time Officer Arroyo first

3

contacted appellant until he discovered the methamphetamine. In searching appellant's backpack, Officer Arroyo also discovered two BB/pellet guns.

## B.    *Trial Court Ruling*

The trial court acknowledged that this was a "close case" because the assertion of illegal activity, relayed by the dispatcher to Officer Arroyo, came from anonymous tips. Nevertheless, the court emphasized that there were two anonymous callers reporting the same activity, not "mere possession of something," but banging on doors and waving a firearm. Each of the two tipsters corroborated the other's assertion of illegal behavior. The trial court determined that Officer Arroyo did not exceed the scope of a lawful pat-search when he retrieved the marijuana and methamphetamine pipe from appellant's pockets based on plain feel. Noting that Officer Arroyo said that he felt the marijuana from appellant's clothing without manipulating it, the court took "him at his word." Moreover, once the officer felt the pipe, which he recognized as contraband just by feeling it, he had the right to go into appellant's pocket and retrieve it. Once Officer Arroyo retrieved the pipe and confirmed that it was a methamphetamine pipe, he had probable cause to arrest appellant and search his person—the search that led to the discovery of the methamphetamine. Thus, the trial court denied the motion to suppress evidence.

## II. DISCUSSION

As mentioned, neither appointed counsel nor appellant has identified any issue for our review. Upon our own independent review of the entire record, we agree none exists. (*Wende, supra,* 25 Cal.3d 436.)

" 'An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] "The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review." [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the

4

deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review.' [Citation.]" (*People v. Alvarez* (1996) 14 Cal.4th 155, 182; accord, *People v. Ayala* (2000) 23 Cal.4th 225, 255.) Measured against this legal standard, we find the trial court properly denied appellant's motion to suppress evidence.

Officer Arroyo had reasonable suspicion to detain appellant based on the 911 calls from two individuals at the Solano Lodge, who separately reported seeing an Asian male knocking on doors at the hotel and brandishing a gun. These anonymous tips were sufficient to justify appellant's detention under the totality of the circumstances. (*Navarette v. California* (2014) __U.S. __ [134 S.Ct. 1683, 1687] (*Navarette*); *People v. Dolly* (2007) 40 Cal.4th 458, 465-466 (*Dolly*).) First, knocking on hotel room doors and waiving a gun around posed a grave and immediate danger to the callers and anyone nearby. (*Navarette, supra,* 134 S.Ct. at p. 1687; *Dolly, supra,* at p. 465.)

Second, there was no reason to think the anonymous phoned-in tips concerning contemporaneous threats with a firearm were more likely to be hoaxes than anonymous phoned-in tips concerning a contemporaneous event of reckless driving, which have been held to provide police with a reasonable suspicion to stop a vehicle. (*Navarette, supra,* 134 S.Ct. at pp. 1689-1690; *Dolly, supra,* 40 Cal.4th at p. 467.) Also, the 911 calls were taped, which make them inherently more reliable and less likely to be false reports. (*Navarette, supra,* 134 S.Ct. at pp. 1689-1690; *Dolly, supra,* at p. 467.)

Third, the tipster-victims provided firsthand contemporaneous description of the crime, including an accurate and complete description of the perpetrator and his location. (*Navarette, supra,* 134 S.Ct. at p. 1689; *Dolly, supra,* 40 Cal.4th at p. 468.) These details were corroborated within minutes by Officer Arroyo when he arrived at the scene. (*Navarette, supra,* at p. 1689; *Dolly, supra,* at p. 468.)

The scope of the stop did not exceed the bounds of *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*).) That the officer had his weapon drawn, ordered appellant to the ground, and

handcuffed him is not dispositive.  (See e.g., *Allen v. City of Los Angeles* (9th Cir. 1995) 66 F.3d 1052, 1056-1057.)  Rather, we look to the totality of the circumstances.  (*Terry, supra,* 392 U.S. at p. 27.)  Here, Officer Arroyo reasonably suspected that appellant was armed.  The encounter lasted no more than a few minutes and was no more intrusive than necessary.

Finally, in the course of a lawful protective search, Officer Arroyo felt the unmistakable shape of a meth pipe.  Under the plain feel doctrine articulated in *Minnesota v. Dickerson* (1993) 508 U.S. 366, 375-376 the warrantless seizure of this item was justified.[1]  The discovery of the contraband then gave Officer Arroyo probable cause to arrest appellant and conduct a full search incident to arrest.  (*People v. Hughes* (2002) 27 Cal.4th 287, 327.)  It was during this subsequent search that the methamphetamine was discovered.  The requirements of *Terry* were satisfied here.

Accordingly, we conclude that the trial court properly denied appellant's motion to suppress.

### III. DISPOSITION

The judgment is affirmed.

---

[1]  We need not address the propriety of the removal of marijuana, as appellant was not charged in connection with this particular item.  And, in any event, the full search was not conducted based upon the presence of marijuana.  Rather, it was the discovery of the methamphetamine pipe that provided probable cause to arrest appellant and search him incident to arrest.

_____
REARDON, J.

We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.